[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties to this action were married in New Haven, Connecticut, on November 30, 1985. There are four minor children, issue of the marriage, to wit: BRETT A. PALLOTTO, born January 31, 1989; PAIGE V. PALLOTTO, born November 6, 1990; DANE A. PALLOTTO, born January 7, 1993; and REID A. PALLOTTO, born January 4, 1995. All four children reside with the defendant wife ("wife") in the jointly owned family home at 4 Lisa Lane, Woodbridge, Connecticut. The plaintiff husband ("husband") moved out of the family dwelling in April 1999, and he resides in the furnished basement of his mother's condominium unit located at 198 Shagbark Drive, Derby, Connecticut. At the time that he moved out, he left the sum of $16,000.00 in the joint account. Since May 1999, up through and including the date of the hearing, he has been paying his wife the sum of $2,000.00 per month for family support.
The husband is thirty-eight (38) years old and is currently employed by SRC Construction, Inc. in Meriden, Connecticut. He is a project manager and oversees jobs throughout this state and elsewhere. His annual income from his principal employment is $56,160.00, and he is covered by health insurance. He also has dental insurance through his employer for himself and the minor children. He has two years of college. At the time of the marriage, he worked for a contractor at $8.00 per hour. In 1986, prior to joining SRC, he formed his own business and was the principal breadwinner for the family. While overseeing a job in 1993, he suffered crippling and debilitating injuries which resulted in a long period of rehabilitation, and which has left him with a permanent disability affecting his vision CT Page 11203 as well as his ability to get around construction sites. He testified that he was unemployed for a period of five years. He received a $50,000.00 lump sum Workers Compensation settlement which was deposited in the joint family account, and he currently receives an annuity amounting to $334.00 per week, which will be payable until such time as the youngest child shall each the age of eighteen (18).
The wife is thirty-six (36) years old and is currently working part-time (three days per week) as an administrative assistant for Manchester Carbide Company, Inc., a corporation owned by her father. She receives health insurance for the entire family as a benefit, in spite of her part-time status. In addition, she has life insurance in the amount of $15,000.00 naming the children as beneficiaries. She is in apparent good health, although she said that she was diagnosed with a non-malignant tumor in her breast in 1998. Also, she has two years of post high school education. Shortly after the marriage, she obtained her real estate license, and she worked up to the time that their son Brett was born. Later, she worked as property manager for seven months until their second son was born. The wife helped out in her husband's company by taking care of the paperwork and other administrative duties. She described this as "very stressful" work.
The parties are the joint owners of the real property located at 4 Lisa Lane, Woodbridge, Connecticut, having a fair market value of according to the financial affidavits, $280,000.00. The Court heard extensive testimony regarding the amount of outstanding indebtedness against the home. It is undisputed that there is a $75,000.00 home equity line at the Money Store, which was obtained in 1998 and used by the parties to clear up some outstanding bills, including car loans. The wife introduced evidence and gave testimony that a substantial amount of monies were loaned to the parties by her father during the course of the marriage. For two years after their marriage, the parties lived in a garage apartment owned by the wife's uncle at a below-market rent. Later, with a loan from the wife's father, they purchased a lot in Bethany and built a home on it with the proceeds from a $100,000.00 mortgage to People's Bank. This mortgage was later paid off by the wife's father by way of another loan from him. Much of the actual construction on the home was performed by the husband and his employees. In 1997, following the husband's accident, the parties sold the home for approximately $205,000.00 and purchased the present family home from the husband's mother in Woodbridge for $150,000.00. There was testimony that this was purchased for substantially below its fair market value. They added bedrooms and other renovations which were financed with the proceeds from the Bethany sale.
The parties have a debt to CitiFinancial with a current balance in the CT Page 11204 amount of $4,689.75. They originally borrowed $1,500.00, but the outstanding balance just grew. The proceeds were used in the husband's business and for family purposes.
After listening to the testimony of both parties, it is apparent to the Court that throughout the course of the marriage both of them had greatly divergent ideas about spending and money management. The husband was much more conservative in this regard, and he testified that the fact that they lived beyond their means caused him considerable anxiety. The Court believes that he often went along with the wife's spending because it was the easier course to follow. The husband testified that the parties "were not a team." Compounding this situation was their frequent recourse to the wife's father for loans, some in considerable amounts. As an example, there was testimony that there were two major setbacks with the husband's business, an underbid in the amount of $29,000.00 and a disputed claim in the amount of $36,000.00. As a result, monies were borrowed from the wife's father. In another instance, her father paid off the balance of the couple's mortgage to Peoples Bank that had an original principal balance of $100,000.00. The wife introduced into evidence two promissory notes to her father, signed by both parties, totaling more than $93,000.00. Outside of the mortgage to the Money Store, these loans constitute, in large measure, the outstanding indebtedness of the family. This largesse was not without cost from an emotional standpoint, since this Court believes that the monies came with strings. At the very least, the husband was often made to feel that he was not a good provider, and that the wife's loyalties were more closely aligned with that of her father and not the family unit. The Court believes that, while the parties were helped over the rough patches by such financial assistance, in particular, during the extended period of the husband's recuperation from his injuries, this frequent assistance also had a corrosive effect and was a major factor in the breakup of the marriage.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down CT Page 11205 irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
 4. That the monies received by the husband in the form of an annuity as part of a Worker's Compensation settlement should be included in his gross income within the meaning of Section 46b-215a-1 (11)(A)(vii).
 5. That based upon the financial affidavits of the parties, the presumptive level of basic child support is $359.00 per week.
 6. That given the age of the wife, her apparent overall good health, the fact that the minor children will all soon be of school age, as well as her education and experience, the Court finds that she has a greater earning capacity in the long term than the actual income as reflected on her current financial affidavit. The Court further finds that her current three-day schedule could be increased to five days, for example, as additional part-time employment at another firm.
 ORDER
IT IS HEREBY ORDERED THAT:
 1. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown, and they are each hereby declared to be single and unmarried.
 2. The parties shall share joint legal custody of the minor children BRETT A. PALLOTTO, born January 31, 1989; PAIGE V. PALLOTTO, born November 6, 1990; DANE A. PALLOTTO, born January 7, 1993; and REID A. PALLOTTO, born January 4, 1995. The wife shall have physical custody of the minor children, subject to the reasonable, liberal and flexible visitation rights of the father. Initial visitation with the father shall be every other weekend from Friday evening at 5:00 P.M. through and including Sunday evening at 7:00 P.M., as well as one (1) evening per week (which shall include dinner) from 5:00 P.M. to 7:00 P.M., and at such CT Page 11206 other times as the parties may agree. The parties shall consult with one another concerning all major issues involving the minor children, including but not limited to, health, education, and religious affiliation and training. In the event that parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office prior to a determination by the Court.
 3. Commencing September 15, 2000, and weekly thereafter, the husband shall pay to the wife the sum of $359.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
 4. The parties shall share equally the cost of day care for the minor children, including summer day camp as available through the Town of Woodbridge Recreation Department, as well as any overnight camp during the summer.
 5. Commencing September 15, 2000, and weekly thereafter, the husband shall pay to the wife the sum of $100.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or September 15, 2010, whichever shall sooner occur.
 6. As to the jointly-owned real estate at 4 Lisa Lane, Woodbridge, Connecticut, within thirty (30) days from the date hereof, the husband shall convey his interest therein to the wife by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the CT Page 11207 wife shall have exclusive possession of the real estate, subject to the existing indebtedness, and she shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the husband harmless from any further liability thereunder. The wife shall pay to the husband the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000.00) upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing home equity line or the obtaining of new or additional financing, or five years from the date of this Memorandum of Decision, whichever shall sooner occur. The wife shall execute a simple Promissory Note to the husband containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of her default, and which shall not bear interest if paid on or before the end of such five year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. Both the deed and note shall be executed simultaneously with the delivery of the Quit Claim Deed to the wife. The wife shall use her best efforts to refinance the existing mortgage/home equity line and/or otherwise eliminate any obligations of the husband thereunder within five (5) years from the date of this Memorandum of Decision.
 7. The husband shall maintain the existing term life insurance (Transamerica Insurance Policy # 41297320) having a face amount of $700,000.00, and shall name the wife and minor children as equal beneficiaries of a minimum of three hundred and fifty thousand dollars ($350,000.00), for so long as he has an obligation to pay alimony and/or child support under the terms of this decree.
 8. The wife shall maintain and pay for the existing health insurance (or its equivalent) for each of the minor children for so long as it is available to her through her present job as an incident of her employment and at reasonable cost, so long as the husband shall have any child support CT Page 11208 obligation for any such child. The husband shall maintain and pay for the existing dental insurance (or its equivalent) for each of the minor children so long as shall be obligated to pay child support for that child, and for so long as it is available to him through his present job as an incident of his employment and at reasonable cost. If the existing health insurance coverage shall become unavailable to the Wife as an incident of her employment, the husband shall obtain and pay the cost of such health insurance, including dental coverage, or their equivalent, provided same is an incident of his employment and available at reasonable cost, for so long as he has an obligation to pay child support. If such health insurance is unavailable to both parties through their respective employment, each shall be responsible for one-half (1/2) the cost of the premiums for equivalent health insurance coverage for the minor children for so long as the husband shall have a support obligation.
 All un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, as well as any co-payments and deductibles, shall be divided by the parties, 50 % by the husband and 50% by the wife. The provisions of Section 46b-84
(e) shall apply.
 Within thirty (30) days from the date of this Memorandum of Decision, the husband shall reimburse the wife the sum of $196.50 as and for his share of the pendente lite un-reimbursed medical expenses of the minor children.
9. Personal property shall be divided as follows:
 A. The children's furniture shall remain in the wife's residence
 B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to CT Page 11209 Family Relations for resolution and recommendation.
 C. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, subject to any existing indebtedness, and each party shall, within thirty ( 30) days from the date of this Memorandum of Decision, cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 10. The husband shall be responsible for any motor vehicle taxes, including interest and penalties, due and owing to the Town of Woodbridge for the 1994 Dodge Caravan, said payments to be made within thirty (30) days from the date of this Memorandum of Decision. In addition, the husband shall be responsible and assume payments for the balance of the outstanding loan from Citifinancial. He shall indemnify and hold the wife harmless from any further liability thereon.
 The wife shall be solely responsible for the current balance of any indebtedness, including any interest and penalties thereon, to her father, Clarence Brown, including, but not limited to, the two promissory notes having a total current balance of $93,303.90. She shall indemnify and hold the husband harmless from any further liability thereon.
 Except as set forth in the foregoing paragraphs, the parties shall each be responsible for the other debts as shown on their respective financial affidavits, including vehicle loans, and they shall indemnify and hold each other harmless from any further liability thereon.
 11. So long as he is current in his child support payments, the husband shall be entitled to claim the personal exemptions for minor children BRETT PALLOTTO and DANE PALLOTTO for state and federal income tax returns, and the wife shall promptly execute the necessary documentation and deliver CT Page 11210 same in a timely manner to the husband for filing with the IRS and/or state taxing authority on an annual basis. The wife shall be entitled to use the personal exemptions for the minor children PAIGE PALLOTTO and REID PALLOTTO.
 12. Each party shall be responsible for his or her respective attorneys fees and costs incurred in connection with this action.
 13. The Court hereby orders a Contingent Wage Withholding Order pursuant to Section 52-362
C.G.S. in order to secure the payment of the alimony/child support orders.
 14. The Court hereby waives participation in the Parenting Education Program for both parties at this time in light of their cooperation regarding the minor children.
THE COURT
SHAY, J.